IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| LUKE LEFEVER,<br><br>　　　　　　Plaintiff,<br><br>　　vs.<br><br>STATE OF NEBRASKA, NEBRASKA DEPARTMENT OF CORRECTIONAL SERVICES, ROB JEFFREYS, JERRY LOVELACE, and TAGGART BOYD,<br><br>　　　　　　Defendants. | 8:24CV377<br><br>**MEMORANDUM AND ORDER** |

　　　　This matter is before the Court on the Complaint, Filing No. 1, filed by Plaintiff Luke LeFever, an inmate at the Reception and Treatment Center ("RTC"), along with a motion for injunctive relief, Filing No. 12, a motion for hearing, Filing No. 15, and a motion for certificate of appealability, Filing No. 16.

　　　　The Court now considers Plaintiff's pending motions and conducts an initial review of the Complaint to determine whether summary dismissal is appropriate under 28 U.S.C. §§ 1915A and 1915(e)(2). For purposes of this initial review, for the reasons that follow, Plaintiff's allegations sufficiently state a First Amendment retaliation claim and an Eighth Amendment claim of deliberate indifference against Jerry Lovelace in his individual capacity, and an ADA claim against the State of Nebraska. All other claims shall be dismissed without prejudice, and Plaintiff's other motions will be denied without prejudice.

# I. INITIAL REVIEW

## A. Summary of the Complaint

The subject matter of this case arises from Plaintiff's allegations of First and Eighth Amendment violations under 42 U.S.C. § 1983, as well as violations of the Americans with Disabilities Act ("ADA") brought against the State of Nebraska and the Nebraska Department of Correctional Services ("NDCS"), and Rob Jeffreys as Director of the NDCS, Jerry Lovelace as Director of Medical Services for the NDCS, and Taggert Boyd as the warden of the RTC, in their official and individual capacities. Filing No. 1 at 1-2.

### 1. Background

In May 2023, Plaintiff filed a § 1983 civil rights suit against many of the same defendants as in the instant Complaint, for various alleged constitutional violations relating to his medical care for multiple disabilities that predate his incarceration (the "May 2023 Suit"). *See LeFever v. Neb. Dep't of Corr. Servs.*, No. 8:23CV187, 2025 WL 326531, at *1 (D. Neb. Jan. 29, 2025) (discussing his preexisting injuries). In the May 2023 Suit Plaintiff alleged claims covering a period between April of 2021 and June of 2023, stemming from incidents occurring while Plaintiff was housed at Tecumseh State Correctional Institution, the RTC, and the Nebraska State Penitentiary. Plaintiff sued at least 33 defendants in their individual and official capacities and alleged federal constitutional violations as well as denials of rights under the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, the State Tort Claims Act, and the Nebraska state constitution. *See* May 2023 Suit, Filing No. 33 at 3. The only defendant whom Plaintiff did not sue in the May 2023 Suit whom he does sue in the instant suit is Lovelace. *Compare* Filing No. 1, *with* May 2023 Suit, Filing No. 13.

Plaintiff alleges that all of his fingers, part of his left hand, the tip of his big toe, and his right leg above the knee have been amputated, as well as

2

reconstruction of his forearm and left ankle as a result of several incidents in 2018 and 2019. Filing No. 1 at 2. As a result of these injuries he was prescribed:

- Aspirin daily to prevent blood clots and other heart issues related to his circulatory system;
- Morphine (three times daily) for chronic regional pain syndrome associated with his left hand;
- Cyclobenzaprine (three times daily) for severe muscle spasms, cramps in the amputated leg, and for severe "fists clenched" muscle spasms and cramps due to his hand and finger amputations;
- Gabapentin (three times daily) for the severe nerve pain in his amputated leg and nerve pain and burning in amputated areas of hands as well as severe nerve damage in his reconstructed ankle;
- Amitriptyline (as needed) to help with sleep due to burning nerve pain;
- Minerin cream (as needed) for the severely dried skin on his heavily scarred area of his reconstructed ankle and where the tip of his toe was amputated; and
- Valacyclovir (twice daily) to treat painful sores on Plaintiff's buttocks due to being seated in a wheelchair most of the time.

*Id.*

### 2. Current allegations

Plaintiff' alleges that on April 20, 2024, he was given a urinalysis test per prison policy and that he tested positive for morphine, which he expected as he is prescribed morphine. *Id.* at 3. As a result of the urinalysis Plaintiff

alleges a misconduct report was issued against him for "Drug or Intoxicant Abuse" and "Violation of Regulations." *Id.*

Plaintiff alleges that in response, he filed a prison grievance regarding the misconduct report, and followed through the prison grievance process until he completed the final step by filing a Step Two grievance, which Plaintiff contends is submitted to Jeffreys' office. *Id.* Jeffreys' response (which Plaintiff contends was performed more than 20 working days after Plaintiff filed his Step Two grievance, in violation of prison policy) was as follows: "This concern has been appropriately addressed with team members." *Id.*

Plaintiff alleges that as a result of his filing the May 2023 Suit, he has been retaliated against by Defendants through denial of access to medical care, medications, and the personal assistance he requires to complete activities of daily living due to his disabilities. In support, Plaintiff submits that on July 26, 2024, Lovelace "came from [the] NDCS Central Office to inform the plaintiff he was taking [Plaintiff] off of Morphine Rx due to changes in CDC pain management recommendations." Filing No. 1 at 3. The following day Plaintiff was informed by an unnamed nurse that all of his medications had been reduced or discontinued altogether by Lovelace without any further discussion with Plaintiff. Filing No. 1 at 3.

Plaintiff brings the following claims:
1. First Amendment Retaliation against Lovelace and Jeffreys for discontinuing his medication in retaliation for his filing of prison grievances and lawsuits.
2. Eighth Amendment violations of deliberate indifference to medical needs and state law tort claims of assault, battery, and negligent medical malpractice against Lovelace for discontinuing Plaintiff's medications.

4

3. ADA claims against all defendants for failure to protect Plaintiff's "ADA rights" which constitute deliberate indifference to Plaintiff's ADA needs.

4. Eighth Amendment failure to protect/respondeat superior claims and state law assault, battery, and negligent medical malpractice tort claims against Jeffreys and Boyd for failure to take administrative or disciplinary action in response to plaintiff's grievances to curb or prevent further violations by defendant Lovelace.

5. Violation of Prison Policy against Jeffreys for failing to respond to his Step Two grievance in the required time.

Filing No. 1 at 3, 6.

Plaintiff alleges that the denial of his medications has resulted in his being mostly bedridden due to overall physical pain, nerve pain, and muscle spasms and cramps. Plaintiff submits that due to the pain he cannot attempt to use his prosthetic leg without getting injured or falling down; therefore he is unable to use the dayroom and yard, resulting in being basically locked down 23 hours per day. He also argues that being near bedridden affects his PTSD, rendering him physically and mentally incapacitated. Plaintiff argues that his continued disability due to his medical deprivations may result in his losing permanent functioning of his hands whereas Plaintiff is mostly independent when given proper medications. Plaintiff submits that the loss of his independence has resulted in his negative treatment by staff and that other inmates have taken advantage of Plaintiff because Plaintiff now requires assistance he did not before the reduction or discontinuation of his medications. Filing No. 1 at 5.

Plaintiff seeks damages from Defendants as well as declaratory judgment and injunctive relief. Filing No. 1 at 6-7.

## B. Applicable Legal Standards

The Court is required to review in forma pauperis complaints to determine whether summary dismissal is appropriate. *See* 28 §§ 1915A and 1915(e). The Court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. § 1915(e)(2)(B).

Pro se plaintiffs must set forth enough factual allegations to "nudge[ ] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

## C. Discussion

### 1. Non-cognizable Claims and Relief

#### a. *Section 1983 Claims against the State of Nebraska*

Plaintiff brings claims against all defendants in their official capacities and seeks monetary damages as relief. Filing No. 1 at 1-2. However, none of Plaintiff's official capacity claims may proceed against any of these defendants under § 1983.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute and also must show that the alleged deprivation was caused by conduct of a "person" acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993). Generally, a state, its agencies and instrumentalities, and its employees in their official capacities are "not 'person[s]' as that term is used in § 1983, and [are] not suable under the statute, regardless of the forum where the suit is maintained." *Hilton v. S.C. Pub. Rys. Comm'n*, 502 U.S. 197, 200-01 (1991); *see also McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008) (states, arms of the state, and state officials acting in their official capacities are not subject to suit under § 1983). Thus, § 1983 does not create a cause of action against NDCS or the State of Nebraska.

Moreover, the Eleventh Amendment bars claims for damages by private parties against a state, state instrumentalities, and an employee of a state sued in the employee's official capacity. *See, e.g., Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995); *Dover Elevator Co. v. Ark. State Univ.*, 64 F.3d 442, 446-47 (8th Cir. 1995). Any award of retroactive monetary relief payable by the state, including for back pay or damages, is proscribed by the Eleventh Amendment absent a waiver of immunity by the state or an override of immunity by Congress. *See, e.g., id.*; *Nevels v. Hanlon*, 656 F.2d 372, 377-78

(8th Cir. 1981). There is nothing in the record before the court showing that the State of Nebraska waived, or that Congress overrode, sovereign immunity in this matter. Thus, Plaintiff's § 1983 claims for money damages against NDCS, the State of Nebraska, and Lovelace, Jeffreys, and Boyd in their official capacities as state employees, are barred by the Eleventh Amendment and must be dismissed.

### b. *Violations of prison policy*

Plaintiff alleges that Jeffreys violated prison policy by failing to respond to his grievance within the required time. Filing No. 1. However, there is no violation of § 1983 for failure of prison employees to follow prison policies. *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993). As such, any claim alleging a failure to follow prison policies cannot proceed.

### c. *Failure to protect/respondeat superior*

Plaintiff also appears to frame his deliberate indifference claims into an Eighth Amendment failure to protect claim against Jeffreys and Boyd or a supervisory liability theory for failing to take "administrative or disciplinary action to curb known abuses and Constitutional violations by defendant Lovelace." Filing No. 1 at 6.

As an initial matter, "[t]he doctrine of respondeat superior does not apply to § 1983 cases." *Hall v. City of St. Louis*, 465 F. Supp. 3d 937, 947 (E.D. Mo. 2020). "A supervisor may still be individually liable under § 1983 '(1) if the supervisor directly participated in the constitutional violation; (2) if the supervisor failed or refused to intervene when a constitutional violation took place in his presence; (3) if the supervisor's failure to train or supervise the employee caused the constitutional violation; or (4) if the supervisor created a policy or custom under which the constitutional violation occurred.'" *Id.*

8

(quoting *B.J.G. ex rel. McCray v. St. Charles Cnty. Sheriff*, No. 4:08CV1178 CDP, 2010 WL 1838414, at *3 (E.D. Mo. May 6, 2010)).

In order to prevail on an Eighth Amendment failure-to-protect claim, an inmate must make two showings. First, the inmate must demonstrate that he or she is "'incarcerated under conditions posing a substantial risk of serious harm.'" *Jensen v. Clarke*, 73 F.3d 808, 810 (8th Cir. 1996) (quoting *Farmer*, 511 U.S. at 834). The second requirement concerns the state of mind of the prison official who is being sued. *Id.* An inmate must show that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." *Id.* (internal quotation omitted). This subjective requirement is necessary because "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Id.* (internal quotation omitted).

Here, Plaintiff does not allege that either Jeffreys or Boyd directly participated in or even knew of Lovelace's reduction of Plaintiff's medications. He also does not allege a failure to train or any policy or custom relating to the alleged violation by Jeffreys or Boyd. As such, any respondeat superior claim against Jeffreys and Boyd cannot proceed as pleaded. Plaintiff's failure to protect claims against Jeffreys and Boyd fail for many of the same reasons as Plaintiff has failed to allege that either Jeffreys or Boyd knew of the reduction in Plaintiff's medications, let alone that either Jeffreys or Boyd knew of the alleged effect on Plaintiff's health if the medications were reduced.

### d. *State law tort claims*[1]

Finally, Plaintiff alleges state law assault, battery, and negligent medical malpractice tort claims against Jeffreys and Boyd relating to their

---

[1] As an initial matter, in this Section 1983 action this Court's subject-matter jurisdiction is based on 28 U.S.C. § 1331, with supplemental jurisdiction over state law claims under 28 U.S.C. § 1367. While

9

failure to take action against Lovelace's reduction or discontinuation of Plaintiff's medications. Filing No. 1 at 6. None of these claims may proceed.

> In Nebraska,
>
> Battery and assault are separate torts resulting from a defendant's intentional actions directed toward another.
> . . .
> Both the intentional tort of battery and the intentional tort of assault require an intent which may be shown by proof that the defendant intended to physically injure or contact another or intended to cause apprehension that such physical injury or contact is imminent.

*Bergman by Harre v. Anderson*, 411 N.W.2d 336, 339 (Neb. 1987) (citing Prosser and Keeton on the Law of Torts, Intentional Interference with the Person §§ 8 through 10 (5th ed. 1984)). Setting aside the fact that neither Jeffreys or Boyd had any physical contact with Plaintiff, as previously noted, Plaintiff fails to allege any facts establishing that either Jeffreys or Boyd intended to harm Plaintiff, or even knew of the reduction in Plaintiff's medications.

To establish a medical malpractice claim a plaintiff must show "(1) the applicable standard of care, (2) that the defendant(s) deviated from that standard of care, and (3) that this deviation was the proximate cause of the plaintiff's harm." *Thone v. Reg'l W. Med. Ctr.*, 745 N.W.2d 898, 903 (Neb. 2008). Here, as the Complaint contains no allegations indicating either Jeffreys or Boyd provided any medical care to Plaintiff, any medical malpractice claim against them also fails.

---

a "district court[ ] may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction", *see* 28 U.S.C. § 1367(c), as at this time Plaintiff's Eighth Amendment claim may proceed, the exercise of supplemental jurisdiction over Plaintiff's state law claims is not precluded.

## 2. Potentially cognizable claims

### a. *First Amendment retaliation*

Plaintiff concludes that defendants Lovelace and Jeffreys discontinued or reduced all of his medication in retaliation for his filing of prison grievances and lawsuits including the May 2023 Suit. Filing No. 1 at 3. In support of his retaliation claim Plaintiff alleges that Lovelace and Jeffreys "share office space at NDCS Central Office" and that Lovelace and Jeffreys conceived the plan to retaliate against Plaintiff while at their offices.[2] Filing No. 1 at 4.

The First Amendment prohibits government officials from retaliating against an individual when the speech or action at issue providing the basis for the alleged retaliation is constitutionally protected. *See Hartman v. Moore*, 547 U.S. 250, 256 (2006). The three elements of a First Amendment retaliation claim are: (1) the plaintiff engaged in protected activity, (2) the government took adverse action against the plaintiff that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity. *Green v. City of St. Louis*, 52 F.4th 734, 739 (8th Cir. 2022).

Both the filing of prison grievances and lawsuits are protected inmate activities. *See Lewis v. Jacks*, 486 F.3d 1027, 1029 (8th Cir. 2007); *Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989). Therefore, "actions taken in retaliation for an inmate's filing of a grievance are actionable under 42 U.S.C. § 1983." *Nelson v. Shuffman*, 603 F.3d 439, 450 (8th Cir. 2010). Here, as

---

[2] To the extent Plaintiff intended to also raise a civil conspiracy claim against Lovelace and Jeffreys pertaining to First Amendment retaliation, the amended complaint's allegation that Jeffreys and Lovelace shared office space is insufficient to plausibly show Lovelace and Jeffreys reached an agreement to conspire against Plaintiff. *See Murray v. Lene*, 595 F.3d 868, 870 (8th Cir. 2010) (stating that a conspiracy claim requires allegations of specific facts showing a "meeting of the minds" among the alleged conspirators); *see also Mendoza v. U.S. Immigr. & Customs Enf't*, 849 F.3d 408, 422 (8th Cir. 2017) (finding that mere cooperation between entities is not enough to establish a meeting of the minds). As such, any intended civil conspiracy claim against Lovelace and Jeffreys fails as pleaded.

11

Plaintiff alleges the retaliation at issue stemmed from his filing of prison grievances and lawsuits while an inmate, the first element is met.

The ordinary-firmness test is designed to weed out trivial matters from substantial violations of the First Amendment. *Santiago v. Blair*, 707 F.3d 984, 992 (8th Cir. 2013). "The test is an objective one, not subjective. The question is . . . . [w]hat would a person of 'ordinary firmness' have done in reaction to the [adverse action]?" *Garcia v. City of Trenton*, 348 F.3d 726, 729 (8th Cir. 2003). Here, the alleged denial of medical care and the resulting pain Plaintiff alleges was caused would cause a person of ordinary firmness to cease filing grievances, meeting the second element.

Additionally, retaliation claims must "allege sufficient facts upon which a retaliatory animus could be inferred" and may not be "speculative" or "conclusory." *Atkinson v. Bohn*, 91 F.3d 1127, 1129 (8th Cir. 1996); *see also Cooper*, 189 F.3d 781, 784 (8th Cir. 1999); *Flittie v. Solem*, 827 F.2d 276, 281 (8th Cir. 1987). Here, Plaintiff concludes that Lovelace reduced his medications in retaliation for filing grievances and lawsuits. In support of his retaliation claim Plaintiff points to the timing of his filing of the May 2023 Suit, which he contends sought to stop multiple constitutional violations by NDCS officers relating to Plaintiff's disabilities and related medical needs, and a grievance regarding the misconduct report relating to morphine being found in his system, and the reduction in his medications by Lovelace, which he contends took place three days after the resolution of his grievance by Jeffreys. Filing No. 1 at 3.

For purposes of initial review, the Court finds these allegations reasonably sufficient to state a claim against Lovelace. Jeffreys responded to Plaintiff's grievance by saying that the issue had been "appropriately addressed with team members," and a team member shortly thereafter

12

addressed the subject of the grievance by removing Plaintiff's pain medication. That could have been coincidental, or it could have been medically appropriate, but for purposes of initial review the Court gives Plaintiff the benefit of the inference that there was a causal relationship and that the motive *could* have been retaliatory.

Plaintiff's allegations as to Jeffreys, however, are speculative. Lovelace was necessarily involved, as the person responsible for the changes to Plaintiff's regimen. Whether that was solely Lovelace's responsibility, whether someone else was involved, and if so whom that was, cannot be inferred from the allegations in the complaint.

### b. *Eighth Amendment deliberate indifference*

Plaintiff brings an Eighth Amendment claim of deliberate indifference to medical needs against Lovelace for discontinuing Plaintiff's medications. Filing No. 1 at 3.

"[P]rison officials violate a prisoner's Eighth Amendment right to be free from cruel and unusual punishment when the officials are deliberately indifferent to the prisoner's serious medical needs." *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). "Deliberate indifference may include intentionally denying or delaying access to medical care, or intentionally interfering with treatment or medication that has been prescribed." *Vaughan v. Lacey*, 49 F.3d 1344, 1346 (8th Cir. 1995). "A prison official exhibits deliberate indifference when the official actually 'knows of and disregards' a prisoner's serious medical needs." *Boyd*, 47 F.3d at 968 (citing *Farmer v. Brennan*, 511 U.S. 825 (1994)). A prisoner can establish knowledge by showing the official knew of a prisoner's serious medical needs based on the fact that the needs were obvious. *Id.* (citing *Farmer*, 511 U.S. at 842 (holding that "it is enough that the official acted or failed to act despite his

13

knowledge of a substantial risk of serious harm")). Of note, "[a] showing of deliberate indifference is greater than gross negligence and requires more than mere disagreement with treatment decisions." *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006).

Section 803(d) of the Prison Litigation Reform Act provides as follows: "No Federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury . . . ." 42 U.S.C. A. § 1997e(e). Furthermore, "[c]laims under the Eighth Amendment require a compensable injury to be greater than de minimis." *Irving v. Dormire*, 519 F.3d 441, 448 (8th Cir. 2008).

For purposes of this initial review, Plaintiff's allegations sufficiently state an Eighth Amendment claim of deliberate indifference against Lovelace and his claim may proceed. Plaintiff alleges that he was informed by Lovelace and prison staff that Lovelace was discontinuing or reducing his medications under new CDC guidance relating to Plaintiff's treatment. Filing No. 1 at 1-2. Plaintiff alleges there has not been any change in CDC recommended treatment for his condition, and that Lovelace is well aware of his medical conditions and persists in denying him proper medical care as Lovelace informed him he was reducing Plaintiff's medications due to new CDC guidance. *Id.* at 1-2. Plaintiff submits that because of the reduction in his medications he now suffers constant pain including severe nerve pain, muscle spasms, a reduction in his ability to sleep due to the pain, and bleeding and opening of painful sores. Filing No. 1 at 4. He also submits that the reduction in medication could cause other complications including blood clots, catching infections, and tearing of skin grafts. *Id.* at 5.

14

### a. *Claims under the ADA*

Plaintiff alleges that his rights under the ADA are being violated by denial of medical care.[3] Filing No. 1 at 5. That claim is necessarily against the State of Nebraska, as individuals aren't subject to liability under Title II of the ADA. *See Alsbrook v. City of Maumelle,* 184 F.3d 999, 1005 n.8 (8th Cir. 1999); *accord Johnson v. Neiman*, 504 F. App'x 543, 545 (8th Cir. 2013).[4]

In order to state a claim under Title II of the ADA, a plaintiff must allege (1) that he is a qualified individual with a disability; (2) that he was excluded from participation in or denied the benefits of the prison's services, programs, or activities, or was otherwise subjected to discrimination by the prison; and (3) that such exclusion, denial of benefits, or other discrimination was by reason of his disability. *Rinehart v. Weitzell*, 964 F.3d 684, 688 (8th Cir. 2020). Additionally, Title V of the ADA prohibits retaliating against any individual because such individual has opposed any act or practice made unlawful by the ADA or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the ADA. *Id.* at 689 (citing 42 U.S.C. § 12203(a)). To state a claim under this provision, Plaintiff must allege that (1) he engaged in statutorily protected activity; (2) adverse action was taken against him; and (3) a causal connection exists between the adverse action and protected activity. *Id.*

---

[3] The Court is aware that ADA claims aren't brought under § 1983. *See Battle v. Minn. Dep't of Corr.*, 40 F. App'x 308, 309 (8th Cir. 2002); *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1010 (8th Cir. 1999); *Grey v. Wilburn*, 270 F.3d 607, 610 (8th Cir. 2001). But the Court declines, on initial review, to read the prefatory statement in the opening paragraph of the complaint—describing his case as "a civil rights action . . . for damages and injunctive relief under 42 U.S.C. § 1983," Filing No. 1 at 1—as necessarily circumscribing the ADA claim found in ¶¶51-55 of the complaint.

[4] Because the claim is against the State of Nebraska, at this point defendants Lovelace, Jeffreys, and Boyd shall remain parties for purposes of *Ex Parte Young*, 209 U.S. 123 (1908), because Plaintiff seeks prospective injunctive relief. *See Randolph v. Rodgers*, 253 F.3d 342, 348 (8th Cir. 2001) (holding that an inmate may proceed under *Ex parte Young* to seek prospective injunctive relief on an ADA claim against state officials in their official capacities).

The Court finds that for purposes of initial review, Plaintiff has satisfied the requirements of both claims. He alleges several disabilities, and that the prison's failure to accommodate and treat those disabilities has excluded him from participation in prison programs by reason of his disabilities. Additionally, he alleges filing an ADA claim, and subsequent denial of medical care that is at least plausibly the result of that protected activity. And his claims are potentially based, at least in part, on conduct that independently violates § 1 of the Fourteenth Amendment. *See United States v. Georgia*, 546 U.S. 151, 157 (2006). "Whether [his] claim has merit beyond that required to survive initial review is a question for another day." *Rinehart*, 964 F.3d at 689.

## II. MOTION FOR INJUNCTIVE RELIEF AND HEARING ON MOTION

Plaintiff seeks injunctive relief and a hearing on his motion. Filing No. 15. But preliminary injunctive relief is an extraordinary remedy. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Reviewing courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 542 (1987). "[C]ourts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24. To obtain a preliminary injunction, a plaintiff must establish (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Id.* at 20.

In support Plaintiff alleges that defendant Lovelace is not a pain management specialist, and he submits that without intervention he will continue to suffer further pain and mental anguish. Filing No. 12. Plaintiff

does not address his likelihood of success on the merits, the balance of equities, or the public interest served by the granting of an injunction.

For these reasons the Court will, therefore, deny Plaintiff's Motion for injunctive relief, Filing No. 12, and motion for hearing regarding the same, Filing No. 15, without prejudice to reassertion.

### III. MOTION FOR CERTIFICATE OF APPEALABILITY

Petitioner seeks a motion granting a certificate of appealability due to the Motion seeking a restraining order and preliminary injunction having not been addressed by this Court since its filing on October 18, 2024. Filing No. 16. This Court interprets Plaintiff's motion as an interlocutory appeal.

As an initial matter, Plaintiff cannot "bypass the adjudicatory competence of the district court with a hopeful eye to the Court of Appeal," as the circuit Court of Appeals is a court of limited jurisdiction which cannot perform a review of Plaintiff's claims as denied by the state courts. *Moss v. Jeffreys*, No. 8:20CV474, 2024 WL 1558787, at *1 (D. Neb. Mar. 22, 2024) (citing *Collier v. Rock Island Police Officers Phillip Ledbetter*, No. 4:14-CV-4103-SLD-JEH, 2016 WL 5796765, at *8 (C.D. Ill. Sept. 30, 2016); citing 28 U.S.C. § 1291). Interlocutory appeals are governed by 28 U.S.C. § 1292, which allows a district judge to certify a non-final order for interlocutory appeal under the following circumstances: (1) the order involves a controlling question of law; (2) there exist substantial grounds for difference of opinion on that question; and (3) the immediate appeal of the order would advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b).

In this instance there is no underlying order from which to appeal, therefore there is no interlocutory order to appeal. Moreover, Plaintiff's motion seeking a preliminary injunction and restraining order has been denied without prejudice in this Memorandum and Order, due to Plaintiff's failure to

meet the elements for obtaining such relief. While Plaintiff may refile his preliminary injunction motion with this Court, his motion at Filing No. 16 is denied.

## V. APPOINTMENT OF COUNSEL

In the May 2023 Suit, Plaintiff has moved for appointment of counsel. May 2023 Suit, Filing No. 34. Given the complexity of these issues, the Court is inclined to grant that motion, and given the interconnectedness of these two lawsuits, the Court is inclined to appoint the same counsel for Plaintiff in both cases. That will be done by separate order.

IT IS ORDERED that:

1. For purposes of initial review only, Plaintiff's allegations sufficiently state a First Amendment retaliation claim and an Eighth Amendment claim of deliberate indifference against Lovelace in his individual capacity, and an ADA claim against the State of Nebraska.

2. All claims against the Department of Correctional Services and defendant Boyd and Jeffreys in their individual capacities shall be dismissed without prejudice.

3. For service of process on the State of Nebraska and Lovelace in his individual capacity, the Clerk of Court is directed to complete two sets of summons and USM-285 forms. The service address for the first set of forms is:

    Office of the Nebraska Attorney General
    2115 State Capitol
    P.O. Box 98920
    Lincoln, NE 68509

The service address for the second set of forms is:

>Jerry Lovelace, in his individual capacity
>Nebraska Department of Correctional Services
>P.O. Box #94661
>Lincoln, NE 68509-4661

4. The Clerk of Court is further directed to deliver the summonses and the necessary USM-285 Forms together with sufficient copies of the Complaint, Filing No. 1, and a copy of this Memorandum and Order to the Marshals Service.

5. The Marshals Service shall serve Defendant Lovelace in his individual capacity by "leaving the summons at the office of the Attorney General with the Attorney General, deputy attorney general, or someone designated in writing by the Attorney General, or by certified mail or designated delivery service addressed to the office of the Attorney General." Neb. Rev. Stat. § 25-510.02(1) (prescribed method for serving the State of Nebraska or any state agency); *see also* Fed. R. Civ. P. 4(j)(2); Neb. Rev. Stat. § 25-511 ("Any employee of the state, as defined in section 81-8,210, sued in an individual capacity for an act or omission occurring in connection with duties performed on the state's behalf, regardless of whether the employee is also sued in an official capacity, must be served by serving the employee under section 25-508.01 and also by serving the state under section 25-510.02.").

6. The Marshals Service shall also serve Defendant Jerry Lovelace in his individual capacity at the Nebraska Department of Correctional Services address shown above. Service may be accomplished by using any of the following methods: personal, residence, certified mail, or designated delivery service. *See* Fed. R. Civ. P. 4(e); Neb. Rev. Stat. § 25-508.01.

7. The United States Marshal shall serve all process in this case without prepayment of fees from Plaintiff.[5]

8. Federal Rule of Civil Procedure 4(m) requires service of the complaint on a defendant within 90 days of filing the complaint. However, Plaintiff is granted, on the Court's own motion, an extension of time until 90 days from the date of this order to complete service of process.

9. Plaintiff's motion for injunctive relief, Filing No. 12, motion for hearing, Filing No. 15, and motion for a certificate of appealability, Filing No. 16, are denied without prejudice.

10. The Clerk of Court is directed to set the following pro se case management deadline: **December 29, 2025**: check for completion of service of process.

Dated this 30th day of September, 2025.

BY THE COURT:

*[signature: John M. Gerrard]*

John M. Gerrard
Senior United States District Judge

---

[5] Pro se litigants proceeding in forma pauperis are entitled to rely on service by the United States Marshals Service. *Wright v. First Student, Inc.*, 710 F.3d 782, 783 (8th Cir. 2013). Pursuant to § 1915(d), in an in forma pauperis case, "[t]he officers of the court shall issue and serve all process, and perform all duties in such cases." *See Moore v. Jackson*, 123 F.3d 1082, 1085 (8th Cir. 1997) (language in § 1915(d) is compulsory); *see, e.g., Beyer v. Pulaski Cnty. Jail*, 589 F. App'x 798 (8th Cir. 2014) (vacating district court order of dismissal for failure to prosecute and directing district court to order the Marshal to seek defendant's last-known contact information where plaintiff contended that the Jail would have information for defendant's whereabouts); *Graham v. Satkoski*, 51 F.3d 710, 713 (7th Cir. 1995) (when court instructs Marshal to serve papers for prisoner, prisoner need furnish no more than information necessary to identify defendant; Marshal should be able to ascertain defendant's current address).